**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL GLENN,** | ) | **CASE NO. 3:08CV3040** |
| | ) | |
| **Petitioner,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **MICHELE EBERLIN, Warden** | ) | **MEMORANDUM OF OPINION** |
| | ) | |
| **Respondent.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

    This matter comes before the Court on Petitioner Michael Glenn's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF #1). For the following reasons, the Court accepts and adopts the Magistrate Judge's Report and Recommendation and denies Petitioner's Petition.

**FACTS**

    The following is a factual synopsis of Petitioner's claims.  The Magistrate Judge's Report and Recommendation, adopted and incorporated, provides a more complete and detailed discussion of the facts.  Petitioner was indicted by the Allen County Grand Jury on one count of Aggravated Robbery in violation of Ohio Revised Code ("O.R.C.") § 2911.01

1

(A)(3), two counts of Aggravated Murder in violation of O.R.C § 2903.01(B), and two counts of Aggravated Murder in violation of O.R.C. § 2903.01(D). The four counts all stemmed from the deaths of two victims.  All four of the Aggravated Murder charges carried Death Penalty Specifications.  Petitioner was found guilty by a jury of all charges.  The court merged the two counts relating to each victim's death.  The case then proceeded to the penalty phase, after which the jury returned unanimous verdicts of life imprisonment without parole for both of the Aggravated Murder convictions.  The court, adopting the jury's verdict, sentenced Petitioner to life imprisonment without parole for each of the two Aggravated Murder counts and ten years for the Aggravated Robbery, to be served consecutively.

On February 21, 2006, Petitioner filed a timely Notice of Appeal with the Court of Appeals for the Third Appellate District.  On July 6, 2006, after not receiving an appellate brief, the court sent counsel a letter warning him that the Appeal would be dismissed if the brief was not filed within ten days. On July 27, 2006, the Court of Appeals dismissed the appeal for lack of prosecution.  On May 21, 2007, Petitioner filed an Application to Reopen his Appeal,  which was granted.  On June 23, 2008, the Court of Appeals affirmed the conviction and sentence. On August 1, 2008, Petitioner filed a Notice of Appeal to the Ohio Supreme Court.  On December 3, 2008, the Ohio Supreme Court dismissed Petitioner's Appeal as not involving any substantial constitutional question.

Petitioner  filed a Petition for a Writ of Habeas Corpus in this court on December 31, 2008, asserting two claims, but withdrew Ground Two in his Traverse. The following claim remains:

> **GROUND ONE**: Petitioner was denied equal protection of the law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, when the trial court permitted the State to use peremptory challenges to strike the only two remaining African-American jurors.

2

On January 13, 2009, this Court referred Petitioner's Petition to the Magistrate Judge for a Report and Recommendation. The Magistrate Judge issued his Report and Recommendation on December 15, 2009. Petitioner filed his Objections to the Report and Recommendation on January 28, 2010, after the Court granted Petitioner's Motion to Extend Deadlines to File Objections.

### **STANDARD OF REVIEW**

When a federal habeas claim has been adjudicated by the state courts, 28 U.S.C. § 2254(d)(1) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." Further, a federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-411.

Pursuant to 28 U.S.C. § 2254(e)(1), findings of fact made by the state court are presumed correct, rebuttable only by clear and convincing evidence to the contrary. *McAdoo v. Elo*, 365 F. 3d 487, 493-494 (6th Cir. 2004). Finally, Rule 8(b)(4) of the Rules Governing §2254 states:

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate.

## ANALYSIS

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. See *Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Petitioner contends that the trial court violated his constitutional rights when, during a peremptory challenge of an African-American juror, the court failed to address the third step required by *Batson v. Kentucky*, 476 U.S. 79 (1986).  Respondent asserts that Petitioner failed to meet his burden under *Batson* because after the State offered its race-neutral reasons for dismissing Jurors 55 and 59, Petitioner did not offer any arguments in rebuttal or preserve his objections to the court's final rulings.

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court held that a prosecutor's use of peremptory challenges to eliminate potential jurors on

4

the basis of race violated a defendant's right to equal protection under the Fourteenth
Amendment.  Essential to any *Batson* challenge is a timely objection by defense
counsel. *Batson*, 476 U.S. at 99-100. Once a valid *Batson* objection has been made, the
trial court must inquire into the basis for the peremptory challenge. The *Batson* inquiry
follows the burden-shifting approach employed in civil rights cases:

> First, the defendant must make a *prima facie* showing that the prosecutor
> has exercised a peremptory challenge on the basis of race. Second, if the
> requisite [*prima facie* showing of race-based peremptory challenge] has been
> made, the burden shifts to the prosecutor to articulate a race-neutral explanation
> for striking the jurors in question. Finally, the trial court must determine whether
> the defendant has carried his burden of proving purposeful discrimination.

In his Report and Recommendation, the Magistrate Judge thoroughly addressed
Petitioner's claim that the court never ruled upon whether the prosecutor's race-neutral
explanations were actually valid.  The Magistrate Judge correctly points out that at the
second step of the *Batson* analysis, "'the government is not required to persuade the
court that its reasons for dismissing the juror were well-founded; rather it need only
demonstrate that its reasons were race-neutral.'" *United States. v. Taylor*, 2005 WL
2372037, *13 (W.D. Mich. Sept.27, 2005) (quoting *United States v. Copeland*, 321 F.3d
582, 599 (6th Cir. 2003)), aff'd, 279 F. App'x 368 (6th Cir. 2008).  Unless a
discriminatory intent is inherent in the prosecutor's explanation, the reason offered will
be deemed race-neutral.'" *Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 131
L.Ed.2d 834 (1995) (*quoting Hernandez v. New York*, 500 U.S. 352, 360 (1991)); *see
also Rice v. Collins*, 546 U.S. 333 (2006); *United States v. Copeland*, 321 F.3d 582, 599
(6th Cir. 2003) (amended opinion); *United States v. Bartholomew*, 310 F.3d 912, 920
(6th Cir. 2002).

In Petitioner's Traverse, he states that minority citizens will be less likely to show
up for jury duty if they believe that the prosecutor or defense will actively try to exclude
them.  In this case, there were only two African-American jurors on the panel of thirty-

5

three jurors, Juror 55 and Juror 59. The  panel underwent an intensive selection process due to the capital specifications in the indictment. Each potential juror was individually questioned about his or her ability to serve fairly in the case. Prospective Juror 55 stated that he had a moral and religious opposition to the death penalty, hearing trouble, and a poor memory. Prospective Juror 59 stated that he had a moral and religious opposition to the death penalty, as well as prior familiarity with the case, due to knowing the victims and living in the neighborhood where the murders occurred.

In a similar case concerning a *Batson* challenge in the Sixth Circuit, the Court concluded as follows: An inference of discrimination might arise, for example, from an unexplained pattern of strikes against jurors of one race, from the prosecutor's handling of jurors during the voir dire process generally or from some characteristic relating to the juror who is the subject of the challenged strike. Some showing must be made to justify the inference, however. In this regard, "[t]he defendant has the burden of producing a record in support of a *prima facie* claim of purposeful discrimination." *Id.* It is true, moreover, that while the prosecution may assist the defense in creating a record by tendering the reasons for its strikes before the prima facie process is completed, it "is under no obligation to help establish the *prima facie* case." Where the defendant has put nothing in the record from which a reviewing court can discern an inference of discrimination, no burden shifting occurs and no further inquiry by the trial court is needed. *Stallings v. Bagley*, 561 F.Supp. 2d 821, 854 (N.D. Ohio 2008).(internal citations omitted).

After the prosecution used a peremptory challenge to excuse Juror 55, the court acknowledged that the juror was of African-American descent and then asked the prosecutor to state his reason for exercising the peremptory.  The court stated that it understood, applied the *Batson* test and overruled the challenge finding there has not been a pattern of strikes against African-Americans. The court went on to state there is a facially race neutral reason given for the peremptory, and overruled the objection.

6

After the state exercised a peremptory challenge to the second African-American, Juror 59, the court again asked the prosecutor to state his reasons for the strike.  The court found that the defense did not make out a prima facie case of purposeful discrimination and overruled the *Batson* objection.

The Magistrate Judge points out that a *Batson* claim presents a mixed question of law and fact and "necessarily focuses on the reasonableness of the decisions of the state courts–that is, whether those decisions constituted an unreasonable application of Supreme Court precedent." *Braxton v. Gansheimer*, 561 F.3d at 458 (quoting *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). *See also Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).  In a habeas petition, a court must give credence to § 2254(e)(1)'s requirement that facts found by a state court are presumed correct unless the petitioner rebuts the presumption by clear and convincing evidence. *Lancaster* at 429, n.1.

The Court of Appeals concluded that the trial court did not err in overruling the *Batson* objections regarding Jurors 55 and 59.  In his Objections to the Magistrate's Report and Recommendation, Petitioner contends that the Court of Appeals upheld a judgment that the trial court never made.  However, as the Magistrate Judge points out, there is no clearly established federal law issued by the Supreme Court mandating that the trial court undertake specific fact-finding exercises prior to rejecting a *Batson* challenge. *See Miller-El v. Cockrell*, 537 U.S. 322, 347 (2003).  In his Report and Recommendation, the Magistrate Judge determined that the Court of Appeals thoroughly reviewed the record and found that the trial court did not err in overruling the *Batson* challenge with respect to Jurors 55 and 59.  The Court agrees that the trial court properly ruled on the objection.

Therefore, the Court finds that the prosecutor presented race-neutral explanations for striking Jurors 55 and 59 at the *Batson* hearing and the trial court accepted the reasons. The Court of Appeals applied the appropriate federal law and

7

concluded that the trial court found the State offered race-neutral reasons for excusing Jurors 55 and 59. The Court also finds that Petitioner has not provided any evidence to discredit the prosecutor's justifications, nor proven purposeful discrimination.

For the foregoing reasons, the Court finds the Magistrate Judge's Report and Recommendation accurately and thoroughly addresses Petitioner's arguments.   The Court **ADOPTS** and **ACCEPTS** the Magistrate Judge's well reasoned Report and Recommendation and Petitioner's Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody is denied.

The Court finds an appeal from this decision could not be taken in good faith. 28 U.S.C. § 1915 (a)(3). Since Petitioner has not made a substantial showing of a denial of a constitutional right directly related to his conviction or custody, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253 (c)(2); Fed. R. App. P. 22(b).

IT IS SO ORDERED.


s/Christopher A. Boyko
Date:2/26/2010                    CHRISTOPHER A. BOYKO
United States District Judge

8